Nott, J.,
delivered the opinion of the court:
Judgment was entered in this case on the 5th June, 1893, against the United States for $1,390, the petition as against the two Indian defendants being dismissed. The court found from the evidence that the depredation was committed by Indians belonging to unknown tribes at the time in amity with the United States. At the last term of the court the defendants moved for a new trial.
*101 On tbe argument two objections were taken to tbe judgment. Tbe first is jurisdictional, and rests upon a matter appearing upon tbe face of tbe judgment, viz, that judgment cannot be entered against tbe United States unless it likewise be entered against tbe offending tribe of Indians. In other words, it is maintained that under the Indian Depredation Act, 1891, tbe United States have assumed no liability except that of paying such judgments as may be recovered against their co-defendants, tbe Indian tribes.
This point is pressed by an argument of unusual force and earnestness, which is entitled to and has received tbe most careful consideration of tbe court,
Tbe court appreciates the difficulties which tbe law officers of tbe Government have to encounter in establishing a defense in this class of cases; that tbe transaction took place long ago, in a remote, unsettled part of tbe country; that the scant and transitory population has changed and changed again since tbe event occurred; that tbe witnesses ordinarily were known to tbe claimant, and ordinarily are unknown to tbe defendants ; that the practical result of tbe construction given to tbe statute by the claimant will be that a claimant need not make tbe responsible tribe a party, but can evade tbe intent of tbe law by alleging that tbe depredation was committed by unknown Indians. These are forcible reasons for a guarded legislative policy; but tbe question still remains: What is tbe in tent ol tbe statute which Congress have framed and sent to the judiciary to execute?
There are some things concerning its interpretation which are indisputable. It is indisputable that the United States must be parties defendant in all cases. It is indisputable that tbe Attorney-General must appear for and defend tbe Indian defendants, if any, in all cases. It is indisputable that the judgment, if any is recovered, must be rendered against the United States in all cases; i. e., not against an Indian tribe alone. It is indisputable that tbe Government will pay all judgments, whether it be reimbursed from the funds of tbe Indian defendants or not. It is indisputable that tbe United States have a right of appeal.
If it was intended that tbe United States shall be responsible only for judgments recovered against Indian tribes, why wore these provisions inserted in tbe statute? The suits against the *102 Indians are in a court of the United States; the Attorney-General of the United States is specially required to appear for and defend the Indian defendants; the United States ultimately respond in damages only in cases where nothing can be collected from the Indian judgment debtors. If no other cases are intended by the statute; i. e., if the United States are not liable for unknown Indians and are not suable where there are no Indian defendants, why are they made parties in all cases'? Why are they made parties at all? They will gain nothing by their appearance as parties. Their defense will necessarily be the Indian defendants’ defense, and nothing else; their liability will be the Indian defendants! liability, and nothing less; their legal representatives will be the same counsel who defend their codefendants. Why, then, should the statute require, if this is its intent, that the United States shall appear and defend and appeal, and have some question of imaginary liability determined by the solemnity of a judgment, when nothing can be determined except the legal liability of these co-defendants?
There are three provisions in the act bearing upon this question. The first relates to the duty of the claimant in the suit, requiring him to set forth in his petition the facts upon which his claim is based; “the persons, classes of persons, tribe or tribes or b and of Indians by whom the alleged illegal acts were committed as near as maybe; the property lost,” etc. (sec. 3). The second relates to the duty of the court; “ the court shall determine in each case the value of the property taken or destroyed at the time and place of the loss or destruction, and, if possible, the tribe of Indians or other persons by whom the wrong was committed, and shall render judgment in favor of the claimant or claimants against the United States, and against the tribe of Indians committing the wrong, when such can be. identified ” (sec. 5). The third relates to the duties of the executive officers, and especially of the Interior Department, after the rights of the parties have been adjudicated and the claims in controversy merged in a final judgment, “ that the amount of any judgment so rendered against any tribe of Indians shall be charged against the tribe by which, or by members of which, the court shall find that the depredation was committed, and shall be deducted and paid in the following manner ” (sec. 6). Then follow directions as to the manner in which a judgment against an Indian *103 tribe shall be satisfied: from annuities due to a tribe, from any other funds due to a tribe, from any appropriation for the benefit of a tribe; and, “if no such annuity, fund, or appropriation is due or available, then the amount of the judgment shall be paid from the Treasury of the United States.”
So far as these provisions of the sixth section are involved, it is manifest that they have no direct bearing upon the action of the court, its jurisdiction and duty, nor upon the liability of the United States as a litigant in court.
If the statute stopped at this point it might be asked, by what authority can a judgment in any case be rendered against the United States in this field of our jurisdiction.
The seventh, eighth, ninth, and tenth sections sufficiently answer this question. The seventh provides that the judgments of the court shall be a final determination “ of the rights and obligations of the parties thereto.” The United States are parties in contemplation of the statute, and, if they have no obligations except those prescribed by the sixth section after a case has left the court, there would be no obligation to be determined by judgment. The eighth section provides that the Attorney-General shall transmit to Congress “ a list of all final judgments rendered in pursuance of this act in favor of claimants and against the United States.” Here the statute expressly recognizes judgments against the United States and proceeds to provide means for their satisfaction, viz, when not paid as hereinbefore provided in the Interior Department, they must be appropriated for in the proper' appropriation bill. The ninth section contains provisions relating to “ warrants issued by the Secretary of the Treasury in payments of such judgments,” etc. It is plain that these are judgments against the United States, and not merely unpaid balances of judgments against the Indian tribes which have failed to be satisfied in the Interior Department. The tenth section provides “that the claimant, or the United States, or the tribe of Indians” shall have a right of appeal to the Supreme Court, recognizing the United States as a party having a direct interest and responsibility in the suit irrespective of its codefendants.
And this is made plainer by the fourth section, which declares it to be the duty of the Attorney-General “to appear and defend the interests of the Government and the Indiahs in the suit.”
*104 If the co ns traction contended for by the Attorney-General is correct, if the Government is never liable except where an Indian tribe is liable, and then only for the unpaid balance of a judgment against it, it seems to the court manifest that all these statutory provisions were absolutely unnecessary. It seems, indeed, that it would be needless to make the United States a party to the suit. With the Attorney-General appearing for and defending the Indian tribes, and with the United States responsible only for what may be recovered against them, every liability would be guarded by a proper defense of the Indian defendants, and nothing would be gained by making the United States a party.
Recurring now to section 5, it may be conceded that the language, standing alone, unexplained by other provisions of the statute, is somewhat ambiguous; that it can be made to read “the court shall render judgment against the United States and against the tribe of Indians committing the wrong only when such Indians can be identified.” Recurring to section 3, it will be found that there is no such ambiguity. The claimant is required to set forth in his petition “ the persons, classes of persons, tribe or tribes, or band of Indians by whom the alleged illegal acts were committed, as near as may be.” It seems to the court incontrovertible that this provision ranks a band or tribe as no higher than the person or the persons of a tribe who committed the depredations. It seems equally clear that if the legislative power intended that there should not be a judgment against any party until there should first be a judgment against a specific tribe, the qualifying words “as near as may be” could not possibly have been used. The plain intent is that the claimant may bring his suit against the United States, describing the Indian depredators as well as he can, which is a very different thing from saying that he must bring his suit against a specific tribe and stand or fall with his right to recover against it and it alone. Our conclusion upon this branch of the case is that the judgment which has been rendered against the United States as the sole party defendant is within the jurisdictional authority of the court.
To the suggestion that this conclusion will practically exempt claimants from joining the really guilty perpetrators of a depredation as a party to the suit, it may be said:
The tribe which is responsible for the depredation is a nec *105 essary party when known. If a claimant, instead of making snob a tribe a party, alleges tbat tlie depredation was committed by Indians unknown, the defendants can give the name of the tribe and set up a nonjoinder of a necessary party. On establishing that fact, on proving that the depredation complained of was committed by that tribe, it will be the end of the case. Whether the court can then resuscitate a case by allowing the necessary party to be brought in is a question which need not now be discussed.
The second ground urged by the counsel for the United States is that he expects to prove on a new trial that a state of amity did not exist, and to establish this by evidence which was not before the court on the previous trial.
This case was submitted on the 27th June, 1892, and was held under advisement for a long time on account of uncertainties in the interpretation of the act. The former counsel for the defendants did not insist that the Indians who committed the depredations were not in amity with the United States, aud there was nothing in the record which indicated that at the time and place of the depredation a state of belligerency existed. With a change of counsel a different view has been taken of the situation, and evidence, consisting of official reports equally well known to the officers of the Government, it is now believed may lead the court to a different conclusion of fact.
A plaintiff prosecuting a right of action where the Government is the defendant is already beset by adverse conditions which he would not encounter if he were prosecuting his case against a humble citizen, a private corporation, or a great city. On account of the limited force at the disposal of the Attorney-General he has to wait ordinarily a long time before his suit can be heard. He recovers no costs, no matter how vexatious the defense or how great the expenses to which he has been put. He recovers no interest, no matter how long he may have been delayed nor how unnecessary the delay may have been. He is liable to have his case carried to the Supreme Court, and be subjected to all the expenses of employing counsel and printing which are incidental to a hearing in that tribunal, no matter how trivial the amount which he has recovered. If the judgment be affirmed, he recovers interest only to the time when the mandate issues, and must then wait without *106 interest until an appropriation be made for Ms payment, inasmuch as the Act 30th September, 1890 (26 Stat. L., p. 504), forbids the,Secretary of the Treasury to ash for an appropriation for judgments which have been or may be appealed. And the question now is, whether to these other harassments and exceptional conditions should be added by the action of the court the uncertainty of having his judgment taken away from him whenever the counsel for the defendants believe that by a presentation of new evidence the court, can be led to make a different finding of fact.
The question has been twice answered before. Commenting upon the Act 25th June, 1868 (Rev. Stat., 1088), which provides that the court may grant a new trial upon such evidence as shall reasonably satisfy the court “that any fraud, wrong, or injustice in the premises has been done the United States,” the court said, all of the judges concurring: “The simple design of this section, as it appears to us, is to protect the Government against unconscionable advantages gained over it without laches or mistake on the part of its officers; not to give it unconscionable advantages over claimants through such laches or'mistake.” (Child, Pratt & Fox Case, 6 C. Cls. R., p. 52.)
And in a subsequent case it was held, where the facts were much like the present: “The Government, when a party litigant, like other suitors, is bound to use due diligence. The officers of the Government on whom the obligation of diligence falls are those whom thelaw makes officially cognizant of the suit or those who are charged in law or in fact with its prosecution or defense. They must be deemed to stand in the stead of the ordinary party sofar as mere legal proceedings are involved, and be subject to his obligations of care and diligence. Therefore a new trial founded on newly discovered evidence should not be allowed where the evidence might have been known to the former law officers charged with the defense of the action.” (Silvey's Case, 7 C. Cls. R., 305.)
Gases may undoubtedly arise where the mistake, error, or negligence of an officer charged with the defense of the Government is so serious or so palpable that it would be a wrong and injustice to allow a judgment to stand. The employment of agents by ordinary principals is voluntary, and the principal has a direct personal interest in the agency, which should render him vigilant to watch the vigilance of his representative. This *107 is true also of corporations, for the directors are stockholders, and every stockholder has a direct personal interest in what the agent of the corporation does. The Government, on the contrary, is a personality, which can act only by agents, and there is no person who. has a direct personal interest in the result of a suit which can induce him to watch the vigilance and fidelity of the law officers who defend it. But it is at the same time manifest that, where a case has been carefully prepared by a law officer of the Government and elaborately argued and carefully considered, the judgment which results should not be lightly set aside, and only where the fraud, wrong, or injustice complained of is established beyond reasonable doubt.
The court is not satisfied that such is the condition of the present case; and the order of the court accordingly is that the defendants’ motion be overruled.